[Civ. No. 35804. Second Dist., Div. Two. Oct. 1, 1970.]

JESUS HERNANDEZ et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Harper & Cone and Naomi Litvin Helm for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Willard A. Shank, Assistant Attorney General, and N. B. Peek, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**FLEMING, J.**—Appeal from the dismissal of plaintiffs' action on demurrer. The legal question is whether because of negligent maintenance of records the state and its employees are answerable in damages for the death of the mother of a former inmate of a state mental hospital who had been released from confinement in a dangerously disturbed condition in June 1968 and who assaulted and killed his mother in August 1968.

Plaintiffs, the heirs of the decedent, Mrs. Luz Leyba Hernandez, contend that the employees of Camarillo State Hospital and other state hospitals have a duty under Welfare and Institutions Code section 7251[1] to maintain proper records of the treatment, care, and testing of inmates, that if they perform the duty negligently they and their employer may be held liable for damages pursuant to those provisions of the Government Code which prescribe liability for a public entity and its employees to the same extent as for a private person. They contend that whenever negligent maintenance of records of treatment in a mental institution deprives the releasing authority of full information about the true condition of an inmate and results in his release in a dangerous condition, the state and its employees responsible for the negligent records may be held liable in damages for injuries to third persons brought about by the release. In reliance on this theory plaintiffs contend they have pleaded a cause of action for wrongful death against the state.[2]

In opposition the state contends that Government Code section 856,

---

[1]Welfare and Institutions Code, section 7251: "Every superintendent, or person in charge of a state hospital, shall, within three days after the reception of a patient, make or cause to be made a thorough physical and mental examination of the patient, and state the result thereof, on blanks prepared and exclusively set apart for that purpose. During the time the patient remains under his care he shall also make, or cause to be made, from time to time, examination of the mental state, bodily condition, and medical treatment of the patient at such intervals and in such manner, and state its results, upon such blank forms, as are approved by the department. In the event of the death or discharge of a patient the superintendent, or person in charge of the state hospital, shall state the circumstances thereof upon such forms as are required by the department."

[2]Plaintiffs' second amended complaint also pleads a cause of action for negligent prescription, administration, care, and treatment of the inmate which brought about his release and the subsequent death of decedent, and one for negligent diagnosis of the inmate's condition which brought about his release and the death. In our view the purported causes of action for negligent prescription and for negligent diagnosis are clearly barred by the specific immunity provisions of Government Code section 855.8, subdivision (a): "Neither a public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to *diagnose* that a person is afflicted with mental illness or addiction or from failing to *prescribe* for mental illness or addiction." (Italics added.)

subdivision (a)(3),[3] confers absolute immunity on the state and its employees for injuries resulting from the release of a mental patient, that because of this immunity plaintiffs have failed to state a cause of action. The trial court agreed with the state's argument, setting forth its views in the following memorandum:

"The State has demurred to the plaintiff's second amended complaint on the grounds that it has been given immunity from suit by Govt. Code, §§ 856 and 855.8.

"Plaintiff would avoid the impact of these sections by arguing that the deceased's injuries were proximately caused, not by the inmate's release, but by negligent maintenance of the records of treatment, care and tests administered to the inmate while an inmate at the defendant's mental hospital. Plaintiff argues the negligence in record keeping made impossible a considered decision by the releasing authority.

"However, the Court believes that the immunity granted by Section 856 is absolute and not subject to qualification by the negligence of [subordinates].

"The purpose of granting this immunity was spelled out in 4 Calif. Law Revision Com. 830 (1963), as follows:

" 'Public entities and public employees should not be liable for negligence in diagnosing that a person is afflicted with mental illness or mental deficiency. Nor should liability be imposed for negligence in prescribing treatment for such conditions. Much of the diagnosis and treatment of these conditions goes on in public mental institutions. The field of psychotics is relatively new and standards of diagnosis and treatment are not as well defined as where physical illness is involved. Moreover, public mental hospitals must take all patients committed to them; hence, there are frequently problems of supervision and treatment created by inadequate staff and excessive patient load that similar private hospitals do not have to meet. For the same reasons, no tort liability should exist for determining whether to confine a person for a mental or emotional disturbance for which commitment to a public hospital is authorized, nor for determining the terms and conditions of the confinement. *Similarly, there should be no tort liability for determining whether to parole or release such persons.*' "

---

[3]Government Code section 856, subdivision (a)(3):
"(a) Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment: . . .
"(3) Whether to parole or release a person from confinement for mental illness or addiction in a medical facility operated or maintained by a public entity."

We reach the same conclusion as did Judge Kenny. In our view the disposition of the cause is specifically controlled by section 856, subdivision (a)(3), which creates an absolute immunity in a public entity and its employees for injuries which result from a determination to release a person from confinement in a medical facility for mental illness. Plaintiffs seek to circumvent this immunity by distinguishing between the liability of those who make the determination to release an inmate and the liability of those who negligently maintain records of an inmate's condition and treatment and thereby bring about an ill-advised determination to release. Plaintiffs cite Government Code sections 855.6, 855.8, subdivision (c), and 856, subdivision (c) for the proposition that there is no immunity for ministerial (as opposed to discretionary) acts connected with the release of an inmate from confinement and that consequently a public entity and its employees may be held liable for damages flowing from the negligent performance of such acts.

We do not believe the statutory scheme supports the distinction drawn by plaintiffs between the liability of those who order an inmate's release and the liability of those who keep records which bring about the release. First, the act of keeping records and determining what facts should be recorded in the care, treatment, testing, examination, and diagnosis of mental patients does not qualify as an exact science but rather involves elements of selection and judgment, and it cannot be said with assurance that the maintenance of an accurate record of a mental patient's care, treatment, testing, examination, and diagnosis involves nothing more than ministerial acts. Since the accuracy, reliability, and completeness of a record of an inmate's care, treatment, etc. can be made a matter for argument in each case acceptance of the distinction advanced by plaintiffs would permit a claim for damages to be made in every instance of release of an inmate from a mental hospital followed by untoward consequences. Second, the provisions of the Government Code referred to by plaintiffs appear designed to protect a patient under confinement from medical malpractice and mistreatment and not to protect the public or the patient from injuries which may follow an unwarranted release from confinement. The comments of the Law Revision Commission quoted by the trial court make it clear that section 856, subdivision (a)(3) provides a broad grant of immunity from liability for a specific type of harm, viz., that caused by the release of a mental patient. We think the grant of immunity extends to all those involved in the process leading to release and its protection is not restricted to the custodial officer who makes the final determination to release. This principle of broad immunity is seen in a related context in *Stearns* v. *County of Los Angeles,* 275 Cal.App.2d 134 [79 Cal.Rptr. 757], a case

construing a comparable provision of the Tort Claims Act. There the asserted negligence of a county coroner in the preparation of an autopsy report resulted in the initiation by the district attorney of an unjustified criminal prosecution against plaintiff. In ruling on plaintiff's action for damages against the county and the coroner based on the negligence of the coroner, the court held that section 821.6 of the Government Code, which creates immunity from liability for injury caused by prosecution, protected the negligent coroner as fully as the district attorney who acted on the basis of the coroner's report. The clear implication of the decision in *Stearns* is that section 821.6 grants immunity to all persons officially connected with a prosecution and not merely to those who make the final decision to issue a criminal complaint.

The principle of broad immunity may also be seen in *Watson* v. *County of Los Angeles,* 254 Cal.App.2d 361 [62 Cal.Rptr. 191], a case growing out of plaintiff's erroneous arrest and incarceration as a result of the failure of two county clerks to keep a proper record of his prior service of sentence. Plaintiff's complaint against the two clerks and the county which employed them was dismissed because of the absolute immunity from liability provided by Government Code section 821.6 for those involved in judicial proceedings. Even though the clerks were negligent in failing to keep proper records and as a consequence of this negligence the court, acting on incorrect information, erroneously issued an arrest warrant, nevertheless both the public entity and its employees, the clerks, remained immune from liability for their acts. With respect to the clerks the court said: "Their acts or omissions (in failing to keep proper records and in giving the court incorrect information) can be considered as 'instituting or prosecuting' a 'judicial proceeding,' in that their behavior provides the first step towards plaintiff's arrest and incarceration and clearly were steps involved in the 'prosecution' of that proceeding." (254 Cal.App.2d at p. 363.) Significantly, no more ministerial acts can be imagined than those which the two clerks failed to perform.

Finally, we think the Government Code sections relating to release from confinement for mental illness carry the strong implication that the Legislature intended to encourage a policy of free release from confinement, unfettered by the possibility of charges of negligence against those who participate in the process leading to release. The adoption of the system of liability for improper release suggested by plaintiffs would be bound to have some inhibiting effect on the speed and frequency with which inmates were released from confinement. A New York court has taken a similar view of the effect of civil liability for improper release of mental patients, and in *St. George* v. *State* (1954) 283 App.Div. 245 [127 N.Y.S.2d 147, 157], affd. 308 N.Y. 681 [124 N.E.2d 320], it said: "To

sustain this judgment would have a more far reaching effect than the money damages. In its practical aspects it would mean that the state could release no one from any State mental institution without being under the risk of liability for whatever he did thereafter, and the result would necessarily be reluctance to release and unnecessary confinement of persons who would benefit by release."

We find the cases relied on by plaintiffs, *McCorkle* v. *Los Angeles,* 70 Cal.2d 252, 260-262 [74 Cal.Rptr. 389, 449 P.2d 453]; *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; *Sava* v. *Fuller,* 249 Cal.App.2d 281 [57 Cal.Rptr. 312], not in point on the ultimate issue of liability.

The order of dismissal is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 25, 1970. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.