[Civ. No. 20392. Fourth Dist., Div. Two. Aug. 20, 1979.]

GERALD R. GUESS, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Harris & Aranda and Richard G. Harris for Plaintiff and Appellant.

George Deukmejian, Attorney General, Barbara A. Noble and Mark A. Weinstein, Deputy Attorneys General, Moore, Graves & Madory and Richard E. Madory for Defendants and Respondents.

OPINION

TAMURA, J.—Plaintiff sued the County of Orange and the State of California for personal injuries sustained at the hands of an alleged outpatient of the county mental health center. The trial court sustained defendants' demurrer to the complaint without leave to amend on the

ground of a statutory governmental immunity. Plaintiff appeals from the ensuing judgment of dismissal.

Accepting as true all material factual allegations in plaintiff's complaint, as we are required to do in reviewing an order sustaining a general demurrer (*Vedder* v. *County of Imperial,* 36 Cal.App.3d 654, 658 [111 Cal.Rptr. 728]; *Aweeka* v. *Bonds,* 20 Cal.App.3d 278, 280 [97 Cal.Rptr. 650]), the following facts emerge:

In November of 1974, Richard W. Castillo was acquitted by a court of the State of Washington of first degree assault and grand larceny on the ground of insanity. The court, however, found that Castillo was a substantial danger to others and presented a substantial likelihood of committing felonious acts jeopardizing public safety unless kept under further control. The court ordered Castillo committed to a Washington state hospital for treatment.

In July of 1975, Castillo obtained a conditional release from the Washington hospital under the terms of which he was required to participate in a follow-up program at the hospital where he had been confined or at the Spokane Community Mental Health Center. In September of the same year, the Washington court amended its conditional release to allow Castillo to join his mother in California. The conditions of the amended release were as follows: (1) That Castillo reside with his mother in Laguna Beach and participate in a follow-up program at the Orange County Mental Health Center; (2) that he refrain from using drugs unless prescribed by a physician and avoid association with people who use drugs; (3) that he have, within a reasonable time, a constructive time-utilization plan involving employment or education; (4) that he comply with any additional rules or regulations as may be hereafter imposed by this court; and (5) that the mental health center shall report to the court on Castillo's progress within 60 days of the date of the order and thereafter at 6-month intervals or sooner should Castillo regress.

Defendant Orange County Community Mental Health Center (hereinafter OCMHC), a public mental health facility established and maintained by Orange County, agreed to treat Castillo in compliance with the conditions set out above and Castillo received both group and individual therapy at OCMHC on at least eight occasions. OCMHC was on actual and constructive notice of Castillo's previously established dangerous mental state and tendencies because of the terms of the conditional

release. In addition, Castillo informed OCMHC through conversations with its employees that he had been arrested and charged with first degree assault and grand larceny. On approximately December 22, 1975, OCMHC diagnosed Castillo as regressed and paranoid. Castillo did not report to OCMHC for therapy after December 22. Nevertheless, OCMHC made no move to warn local police of Castillo's dangerous condition or prevent Castillo from acting out his violent tendencies. Nor did OCMHC notify the Washington court of Castillo's regressed state as it was required to do under the provisions of the conditional release.

On January 29, 1976, Castillo attempted to rob a bank in South Laguna. During the attempt, Castillo shot and severely wounded plaintiff, an employee of the bank. Plaintiff filed the instant action alleging in 11 separate causes of action that defendants' negligence in controlling Castillo's behavior was the proximate cause of his injury and subsequent suffering.

The county demurred to the complaint on the ground that the pleadings failed to allege facts sufficient to state a cause of action in that the county enjoyed sovereign immunity pursuant to Government Code sections 854.8, 855.8, and 856.[1] The state demurred on the same ground and urged additionally that the complaint failed to state a cause of action because there is no duty to warn the general public of dangerous tendencies of released mental patients and that the state has no responsibility for OCMHC and thus is not liable for its alleged negligence. The trial court sustained the demurrers without leave to amend and entered a judgment of dismissal.

[1]Hereinafter all statutory references are to the Government Code unless otherwise indicated.

Section 854.8 provides:

"(a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 855, and 855.2, a public entity is not liable for:

"(1) An injury proximately caused by a patient of a mental institution.

"(2) An injury to an inpatient of a mental institution.

"(b) Nothing in this section affects the liability of a public entity under Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code.

"(c) Except for an injury to an inpatient of a mental institution, nothing in this section prevents recovery from the public entity for an injury resulting from the dangerous condition of public property under Chapter 2 (commencing with Section 830) of this part.

"(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. The public entity may but is not required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee who is lawfully engaged in the

Plaintiff appeals from the judgment on several grounds. His first contention is that the county and the state are not immune from liability for negligence under the provisions of sections 854.8, 855.8, and 856. In support of this contention, he argues that OCMHC's action in failing to notify the Washington court of Castillo's regression was a failure to perform a ministerial duty, which fact renders defendants liable to plaintiff despite the existence of specific immunity statutes. Plaintiff next contends that the state is responsible for OCMHC's actions because the center is state regulated, funded and controlled. He also maintains that OCMHC's special relationship to Castillo as his therapist established an affirmative duty to control his actions, so that failure to protect the public from his violent behavior resulted in a cause of action for negligence pursuant to *Tarasoff* v. *Regents of University of California,* 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]. Finally, plaintiff

---

practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action, based on such malpractice, to which the public entity has agreed."

Section 855.8 provides:

"(a) Neither a public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or from failing to prescribe for mental illness or addiction.

"(b) A public employee acting within the scope of his employment is not liable for administering with due care the treatment prescribed for mental illness or addiction.

"(c) Nothing in this section exonerates a public employee who has undertaken to prescribe for mental illness or addiction from liability for injury proximately caused by his negligence or by his wrongful act in so prescribing.

"(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any treatment prescribed for mental illness or addiction."

Section 856 provides:

"(a) Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment:

"(1) Whether to confine a person for mental illness or addiction.

"(2) The terms and conditions of confinement for mental illness or addiction.

"(3) Whether to parole, grant a leave of absence to, or release a person confined for mental illness or addiction.

"(b) A public employee is not liable for carrying out with due care a determination described in subdivision (a).

"(c) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in carrying out or failing to carry out:

"(1) A determination to confine or not to confine a person for mental illness or addiction.

"(2) The terms or conditions of confinement of a person for mental illness or addiction.

"(3) A determination to parole, grant a leave of absence to, or release a person confined for mental illness or addiction."

contends that OCMHC had a duty under California Administrative Code, title 9, article 11, section 680, to provide continuity of care and flexibility of staffing to meet Castillo's treatment needs and that failure to so provide gives rise to a cause of action for negligence. Since we conclude that Orange County and the State of California do indeed enjoy governmental immunity from liability in this instance, we need not reach the questions of whether or not defendants owed a duty of care to the general public and to plaintiff as an individual.

## Discussion

Plaintiff's main contention for the purposes of this appeal is that the lower court erred in ruling that Orange County and the State of California are immune from liability for negligence under the provisions of sections 854.8, 855.8 and 856. In support of this contention, plaintiff argues that because OCMHC failed to perform a ministerial, rather than a discretionary duty, it is not shielded from liability under the California Tort Claims Act. (§ 810 et seq.) He cites section 815.2.[2] *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, and *Johnson* v. *State of California,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], as authorities for his argument. ■■■ As explained below we conclude that defendants enjoy sovereign immunity in the instant case because of the broad, general immunity provided to public entities under section 854.8. However, for purposes of clarity, we will discuss each of the three code sections which plaintiff has challenged in this appeal.

■■ Section 856 is a specific application of the immunity for discretionary acts necessary for the functioning of governmental entities as developed in California common law and codified in section 820.2.[3] (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425; *Johnson* v. *State of California, supra,* 69 Cal.2d 782; *Muskopf* v. *Corning*

[2] Section 815.2 provides:

"(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[3] Section 820.2 provides:

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

*Hospital Dist.,* 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]; *Lipman* v. *Brisbane Elementary Sch. Dist.,* 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]; see Legis. Com. com.—Senate, 32 West's Ann. Code (1966) pp. 284-285. See also Note, *The Discretionary Immunity Doctrine in California* (1968) 19 Hastings L.J. 561.) It shields both public entities and public employees acting within the scope of their employment from liability for determining whether to confine a person suffering from mental illness or addiction and whether to parole or release a person from such confinement. The section also exonerates public employees from any liability for using due care in carrying out a determination to confine, release, or parole. However, the section does not shield public employees for a negligent or wrongful act or omission in carrying out such a determination. Thus, under the provisions of section 815.2, the "vicarious liability" section, a public entity would be vicariously liable for such negligent or wrongful omissions on the part of its employees in carrying out ministerial acts flowing from discretionary decisions.

Applying section 856 to the case at bench, we note that the allegedly negligent omission to which plaintiff points—failure to notify the Washington court of Castillo's regression—involves the carrying out of conditions of release of a mental patient from custody. Thus, even though the OCMHC did not make the decision to release Castillo, the fact that it exercised its discretion to take Castillo as a patient under the conditions established by the court might arguably render it vicariously liable under sections 856 and 815.2 for the ministerial acts of its employees in caring for Castillo. As we explain below, however, the liability established by these statutes must fall before the broad, absolute immunity provided defendants by section 854.8.

■ Section 855.8 is very similar to section 856. It exonerates both public entities and public employees acting within the scope of their employment from liability for diagnosing or failing to diagnose mental illness or addiction or for failing to prescribe for those diseases. It also shields public employees for administering treatments prescribed for mental illness or addiction with due care. Public employees are not exempted, however, from liability for injuries arising from negligence or wrongful acts in prescribing treatments or in administering prescribed treatments. Thus, again, were it not for the broad, absolute immunity discussed below, the public entities involved might be vicariously liable under sections 855.8 and 815.2 for their negligence or wrongful omissions in the ministerial functions of treating Castillo.[4]

---

[4]Sections 856 and 855.8 are very similar to section 845.8, which insulates public employees and public entities from liability pursuant to the decision to parole an inmate

 Section 854.8, however, unlike sections 856 and 855.8, embodies an absolute, broad immunity prevailing over all other provisions of the Tort Claims Act. The section begins: "Notwithstanding any other provision of this part, . . ." The Legislative Committee comment on this section quoted in Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964) at page 628, indicates clearly that the Legislature intended that public entities should enjoy absolute immunity for the consequences of such persons' actions: "The immunity provided to public entities by this section prevails over all other provisions of the statute. Thus, the public entity is immune from liability for injuries to persons committed or admitted to mental institutions. . . . In addition, the section provides public entities with immunity from liability for injuries proximately caused by persons committed or admitted to mental institutions."[5]

Like sections 856 and 855.8, section 854.8 does not exonerate public employees from liability for injuries proximately caused by their negligence or wrongful omissions with regard to ministerial duties. However, while under sections 856, 855.8 and 815.2 public entities are vicariously liable for such wrongs, section 854.8 mandates that public entities must pay judgments for or indemnify only those public employees who are licensed by the state in one of the healing arts and who suffer a judgment of malpractice against them for acts or omissions within the scope of their employment. (*County of Los Angeles* v. *Superior Court,* 62 Cal.2d 839, 844 [44 Cal.Rptr. 796, 402 P.2d 868].) Thus section 854.8 shields public entities from *all* direct and vicarious liability for injury proximately caused by a patient of a mental institution, except for specific "malpractice" situations. Section 815.2 cannot be used to impute liability to the public entity for the acts of its employees under this section of the Tort Claims Act. (See Van Alstyne, Cal. Government Tort Liability (Cont.Ed. Bar 1964) p. 630.)

As amended in 1970, section 854.8, subdivision (a), provides in pertinent part that "a public entity is not liable for: (1) An injury

of a penal institution. These three sections shield public entities and public employees from liability for specific *discretionary* acts which must be performed in order to carry out the purposes for which the agencies were established, but do not similarly limit liability for ministerial functions. (See *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, 447; *Johnson* v. *State of California, supra,* 69 Cal.2d 782, 798; *County of Santa Barbara* v. *Superior Court,* 15 Cal.App.3d 751, 756 [93 Cal.Rptr. 406; *Fish* v. *Regents of Univ. of Cal.,* 246 Cal.App.2d 327 [54 Cal.Rptr. 656]; but see *Whitcombe* v. *County of Yolo,* 73 Cal.App.3d 698, 712-713 [141 Cal.Rptr. 189].)

[5]Prior to amendment in 1970, section 854.8 applied only to persons "committed or admitted to a mental institution."

proximately caused by a patient of a mental institution." Both Orange County and the State of California are obviously "public entities" for the purposes of this section. (§ 811.2.) In order to understand and apply section 854.8 to the instant case, we must also ascertain the meaning of the term "patient" and the phrase "mental institution." ■ The Law Revision Commission comment to the 1970 amendment to section 854.8 (32 West's Ann. Codes (1979 Cum. Supp.) p. 135) explains the meaning of "patient" in this context: "The term 'inpatient' refers only to inmates of mental institutions and not outpatients; the broader term 'patient' refers to both inpatients and outpatients." Since plaintiff alleged that Castillo was an outpatient of OCMHC, the term "patient" clearly applies to him. For the meaning of the phrase "mental institution," we need to examine several other statutes.

■ Section 854.2 defines "mental institution": "As used in this Chapter, 'mental institution' means any state hospital for the care and treatment of the mentally disordered or the mentally retarded, the California Rehabilitation Center . . . or any county psychiatric hospital." Section 854.3 defines "county psychiatric hospital": "As used in this Chapter, 'county psychiatric hospital' means the hospital, ward, or facility provided by the county pursuant to the provisions of section 7100 of the Welfare and Institutions Code." Section 7100 provides in turn that "[t]he board of supervisors of each county may maintain in the county hospital or in any other hospital situated within or without the county or in any other psychiatric health facility situated within or without the county, suitable facilities and nonhospital or hospital service for the detention, supervision, care, and treatment of persons who are mentally disordered, mentally retarded, or who are alleged to be such." Since plaintiff has alleged that OCMHC is a mental health facility operated by Orange County and established pursuant to the Short-Doyle Act (Welf. & Inst. Code, § 5600 et seq.) and that it provided outpatient service to Castillo including treatment, care, control, monitoring and supervision, we must conclude that OCMHC is a "mental institution" for the purposes of section 854.8.

■ Defendants as public entities, therefore, have absolute immunity from any liability for injuries proximately caused by Castillo, a "patient" of the "mental institution." (See *County of Los Angeles* v. *Superior Court, supra,* 62 Cal.2d 839, 844; Mosk, *The Many Problems of Sovereign Liability* (1966) 3 San Diego L.Rev. 7, 19.)[6] The trial court did not err in

---

[6]At oral argument, plaintiff contended that in *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, the Supreme Court analyzed section 854.8 and

holding the state and county immune from liability for plaintiff's injuries. Even though the acts allegedly committed by OCMHC's employees were arguably ministerial acts not exempted from liability under other provisions of the Tort Claims Act, section 854.8 extends absolute immunity to the state and county for the acts alleged in this suit.[7]

The judgment is affirmed.

Gardner, P. J., and Morris, J., concurred.

A petition for a rehearing was denied September 5, 1979, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1979.

---

established a judicially created exception to the statute rendering the Regents of the University of California liable for the actions of a patient of the university's mental health facility. We can, however, find no reference to section 854.8 in *Tarasoff*. Moreover, we note that in *Tarasoff*, the court held that *defendant therapists* (*not* the Regents) were not immune from liability for the alleged omission of their ministerial duty to warn their patient's intended victim of her danger. (*Id.*, at pp. 444-447.) The court's analysis and discussion indicate that it was establishing the liability of public employees, not of a public entity.

[7]In our view, the State of California would not be responsible for Orange County's alleged negligence toward plaintiff in any case. Plaintiff contends that the state is liable because it regulates, funds, and controls OCMHC through provisions of the Short-Doyle Act mandating mental health programs for California counties. He cites two cases in support of his contention: *Porter* v. *Arthur Murray, Inc.*, 249 Cal.App.2d 410 [57 Cal.Rptr. 554], and *Nichols* v. *Arthur Murray, Inc.*, 248 Cal.App.2d 610 [56 Cal.Rptr. 728]. These authorities are, however, inapposite since they treat of the question of principal and agency as between parties to a private agreement. The instant case involves two separate and distinct public entities rather than private parties bound by a written contract. As such the liabilities of both public entities are governed by the general provisions of sections 815 and 815.2. Section 815 provides that a public entity is immune from suit unless liability is established by statute. Section 815.2 in turn provides that a public entity is liable for the actions of "an employee of the public entity within the scope of his employment." Since plaintiff has not alleged that OCMHC employees are employees of the state or pointed to any part of the Short-Doyle Act which establishes state liability for actions of county mental health facilities or to any other statute assigning responsibility to the state, the State of California is immune from suit for the alleged negligence of OCMHC. (*Gonzales* v. *State of California*, 29 Cal.App.3d 585, 590 [105 Cal.Rptr. 804].)