[Civ. No. 5050. Fifth Dist. Apr. 18, 1980.]

DONNA BUFORD et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

James J. Igoe for Plaintiffs and Appellants.

George Deukmejian, Attorney General, John M. Morrison and Bruce J. Braverman, Deputy Attorneys General, Hurlbutt, Clevenger, Long & Vortmann, Paul Vortmann, Philip B. Laird, Jr., Chinello, Chinello, Shelton & Auchard, Daniel I. Aller III and John D. Chinello, Jr., for Defendants and Respondents.

OPINION

**ZENOVICH, J.**—In this case we deal with a state mental hospital's potential liability for a person who is released from its confines and who is allegedly known to be a social menace to the community in which he is released. Plaintiffs commenced an action against the State of California (hereinafter referred to as State), the County of Tulare (hereinafter re-

ferred to as County), the City of Visalia (hereinafter referred to as City), Atascadero State Hospital, Kenneth Daniels, and numerous doe defendants for damages for injuries resulting from the acts of Daniels, which were allegedly based on the negligent conduct of defendants. The State filed a general demurrer, the City filed a general demurrer and a motion to strike and dismiss, and the County initiated a motion to have portions of plaintiffs' complaint stricken. The superior court sustained the State's and City's general demurrers to the complaint with leave to amend within 15 days, as well as granting the County's motion to strike. Plaintiffs responded by filing an amendment to their complaint, and the aforementioned three defendants demurred to the amended complaint on the ground that it failed to state a cause of action. The superior court sustained the three general demurrers to the complaint without leave to amend, and thereafter entered a judgment of dismissal.[1]

On appeal from a judgment of dismissal following an order sustaining a demurrer without leave to amend, we must treat every material, issuable fact properly pleaded as true (*Commercial Standard Ins. Co. v. Bank of America* (1976) 57 Cal.App.3d 241, 246 [129 Cal.Rptr. 91]) and shall treat pleaded facts as if they were established facts. We therefore begin by setting forth the relevant allegations of the complaints.

Plaintiffs, Donna, Ben and Roy Buford, filed a first amended complaint with virtually identical causes of action. The following facts are material to all the causes of action alleged by the plaintiffs. Defendant Kenneth Daniels was released from Atascadero State Hospital on an indefinite leave of absence on January 12, 1976; subsequently, however, that status was changed, on June 2, 1977, to an unauthorized leave of absence. Daniels had been confined to Atascadero as a result of numerous offenses, the nature of which were unknown at the time of the filing of the complaint. Plaintiffs Donna Buford, an employee of the Pump House Bar in Visalia, and Ben Buford, her son, were kidnaped and abducted from the tavern by Daniels on April 20, 1978. At about 2 a.m. on that date, Daniels placed a hunting knife against the throat of Donna and forced Ben and her into a nearby automobile. The course of the abduction lasted approximately five hours, during which Donna was

---

[1]In this latter judgment, the superior court granted the demurrer for the following reason: "Plaintiff fails to allege specific facts required to state a cause of action. See cases of: *Tarasoff* v. *Regents*, 17 Cal.3d, 425; *Johnson* v. *State*, 69 Cal.2d, 782 and *Thompson* v. *County*[■] (Cal.App.)."

forced to strip naked, orally copulate Daniels, and drink the defendant's urine. Moreover, Daniels constantly assaulted and battered both Donna and Ben with a hunting knife. Ben was also forced to disrobe and was robbed by Daniels during the kidnaping, which all took place in Daniels' car. Ben was further forced to view the assaults on his mother.

In the first cause of action (which was incorporated into the amended complaint), plaintiff Donna Buford alleged that defendant State committed several acts or omissions which resulted in her injuries. Her respective theories of negligence were that the proximate cause of her injury was the State's conduct in: (1) failing to adequately diagnose and render treatment for the psychotic tendencies of Daniels; (2) failing to keep adequate records on the treatment and confinement of Daniels at Atascadero; (3) failing to communicate medical and psychiatric findings about Daniels to the authorities in charge of release procedures; (4) releasing Daniels from Atascadero; (5) failing to adequately provide follow-up procedures and psychiatric supervision after Daniels' release; (6) failing to communicate Daniels' change in status to other state agencies; (7) failing to communicate psychiatric findings which might have resulted in Daniels' recommitment; (8) failing to inform state and local law enforcement agencies about both the unauthorized leave and the threat posed to others by Daniels' release; (9) failing to inform the California State Department of Rehabilitation, the City of Visalia, and the County of Tulare about the unauthorized leave and menace posed by Daniels; (10) failing (via employees of the State Department of Rehabilitation) to inform Atascadero about Daniels' whereabouts; (11) failing (via employees of Atascadero) to notify the California Department of Corrections about Daniels' dangerous criminal propensities and his unauthorized leave; (12) failing (via the State Department of Corrections) to notify both the California judicial system and Visalia municipal or judicial district courts about Daniels' unauthorized leave for purposes of probation placement; (13) failing (on the part of the State Department of Corrections and California law enforcement agencies) to apprehend Daniels; and (14) failing to maintain a computer system which made the judicial system aware of Daniels' past criminal record. Plaintiff Donna Buford asserted that these acts or omissions made the State liable under Government Code[2] section 815.6. Following the disposition on the first set of demurrers and motions, plaintiffs amended their complaint for purposes of suing both the State and its employee, Barry Zolotar. Plaintiffs alleged that Zolotar, an employee in

---

[2] All references are to the Government Code unless otherwise indicated.

the community planning-orientation and follow-up department of Atascadero, was entrusted with the duty of supervising Daniels after he was allowed to go on home leave (leave of absence). It was further averred that Zolotar negligently performed his duty of informing Atascadero or law enforcement authorities about Daniels' whereabouts and condition; further, he "made no attempts to have Daniels apprehended while full knowing Daniels was a menace to the people of Tulare County and to residents of Visalia, where plaintiff Donna Buford in fact resided." In addition, plaintiffs also alleged that the State was liable for the following acts: (1) the failure of Len Hacker, an employee, to contact Atascadero after meeting with Daniels at the Visalia branch of the State Department of Rehabilitation on March 2, 1978; and (2) failure of A. W. Orton, an officer of the State Parole Authority, to inquire of Daniels' status or to notify Atascadero of his whereabouts after seeing him shortly before the attack on plaintiffs.

Plaintiff Donna Buford also alleged that negligent acts or omissions were committed by defendant County. On April 13, 1978, Daniels was allegedly arrested by a member of the Tulare County Sheriff's office for violation of Vehicle Code section 23102 (misdemeanor drunk driving) and thereafter taken into custody. After being tried in the Exeter-Farmersville Judicial District on April 14, Daniels was not retained in custody and "was allowed to go free...." As a condition of his probation, Daniels agreed to undergo once-a-week sessions at the Visalia Community Services Counseling Center office. Based on these facts, plaintiffs advanced several theories of negligence against defendant County: (1) failure of counseling service employees to notify Atascadero and law enforcement agencies of Daniels' whereabouts; (2) failure of counseling service employees to adequately treat and prevent the subsequent actions of Daniels; (3) failure of county counseling service employees to warn plaintiffs of the dangerous tendencies of Daniels; (4) failure of counseling service employees to keep adequate records of their psychiatric findings about Daniels; (5) failure of county judicial employees to inform Atascadero of Daniels' whereabouts or to inquire about his past criminal record before placing him on probation; (6) failure of county law enforcement agencies to delve into the past criminal record of Daniels or detain him for further custody; (7) failure of law enforcement agencies to inform Atascadero about Daniels' arrest; (8) failure of the Tulare County Probation Department to inquire into Daniels' past criminal record and inform Atascadero about his whereabouts; (9) recommending probation in light of Daniels' past record and absentee status; and (10) failure of Caroline Estrada, clerk

of the Tulare court, to ascertain Daniels' status and to so inform the sentencing judge.

Plaintiff Donna Buford also sought damages against defendant City for the first nine reasons listed in her action against defendant County. Based on the sum of her allegations against all defendants (which included Daniels, Zolotar, Hacker, Orton and Estrada), plaintiff prayed for compensatory, incidental and punitive damages relating to injuries suffered during the abduction.

Plaintiff Ben Buford alleged a second cause of action which relied upon the identical arguments advanced by his mother. He also prayed for the assessment of compensatory, incidental and punitive damages. Based on the incidents described above, plaintiff Roy Buford, the husband of Donna, brought a separate cause of action against all the defendants to recover compensatory and punitive damages resulting from a loss of consortium.

■ The function of a demurrer is to test the sufficiency of plaintiffs' pleading by raising questions of law. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 796, pp. 2408-2409.) ■ Sustaining a general demurrer without leave to amend is not an abuse of discretion if it appears from the complaint that under applicable substantive law there is no reasonable possibility or probability that the defect can be cured by amendment. (*Vater* v. *County of Glenn* (1958) 49 Cal.2d 815, 821 [323 P.2d 85]; *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 832 [149 Cal.Rptr. 883].) With these standards in mind, we first examine whether the plaintiffs in this case stated a cause of action against defendant City.

Plaintiffs' causes of action against City are based upon the conduct of employees of the community counseling service, the municipal and judicial district system, and various city law enforcement agencies. The gravamen of the complaint alleges that the pertinent city employees either failed to notify Atascadero about Daniels' whereabouts, failed to adequately treat Daniels, failed to warn the neighboring community of his dangerous tendencies, failed to keep Daniels in custody, or failed to keep adequate records of psychiatric findings on Daniels. Closer examination of the employees to be sued reveals that they are under the hire of County, thereby foreclosing any imposition of liability upon City.

The employees of the Visalia municipal and/or judicial district system are county employees, since municipal and justice courts within California are generally regarded as subdivisions of county governments. (See Cal. Const., art. VI, § 5; Code Civ. Proc., §§ 81-89; § 71220; *Villanazul* v. *City of Los Angeles* (1951) 37 Cal.2d 718, 724-725 [235 P.2d 16]; 56 Ops.Cal.Atty.Gen. 320, 321-322 (1973).) Moreover, the Visalia Probation Department is established pursuant to county charter and is not part of the city government. (See Code Civ. Proc., §§ 131.3-131.6; Pen. Code, § 1203.6.) The record shows that Daniels was arrested and taken into custody by the Tulare County Sheriff's office, rather than any law enforcement agencies associated with defendant City. Finally, the Visalia Community Counseling Service was established as part of the community mental health services set up by county governments under the Short-Doyle Act. (See Welf. & Inst. Code, § 5600 et seq.) Plaintiffs concede that the community service is administered and controlled by County.

■ Having determined that City was not vicariously liable for county employees, we now must decide whether the conduct of county personnel stated a claim against defendant County. We conclude that no cause of action was stated against County because (1) it owed no duty of care towards either the plaintiffs or Daniels, and (2) there was immunity for liability in the event that a duty of care existed.

Although persons generally owe no duty to control the conduct of another, the courts have carved out exceptions in cases where the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct. (See *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; Rest.2d Torts (1965) §§ 315-320.) Arguably, it might be advanced that County was in a special relationship to either the plaintiffs or Daniels. Upon examination of the case law involving findings of special relationships, however, we cannot find that County owed a duty to either the victims (plaintiffs) or Daniels.

As to whether there was a special relationship between defendant County and plaintiffs, we survey past precedents for guidance on when a duty is imposed.

The instant case resembles the factual setting in *McDowell* v. *County of Alameda* (1979) 88 Cal.App.3d 321 [151 Cal.Rptr. 779]. *McDowell*

involved a county hospital which diagnosed an individual manifesting strange and bizarre behavior as constituting a danger to himself and other people. After learning that the individual was entitled to medical services under the Kaiser Health Plan, the county hospital sent him in a taxicab to the Kaiser Foundation Hospital after Kaiser refused to send an ambulance. The individual never got to the private hospital in the taxicab and shot a victim a few days later. A wrongful death action was filed alleging that the county hospital was negligent in failing to transport the dangerous individual by means which would guarantee his arrival at the private hospital. (*Id.*, at pp. 323-324.) The appellate court found no special relationship between defendant and the victim. It stated: "In the present case, there is no allegation that respondent's [county hospital's] patient,... had any relationship to decedent. Decedent was a third person whose life was not known by respondents to be threatened by [the dangerous individual]. There is no allegation that [the dangerous individual] was a threat to the decedent, nor is there any allegation that any particular person or group of people would be harmed by the release of [the dangerous individual]. *Respondents do not owe a duty to society because [the dangerous individual's] behavior may constitute a danger to any person.*" (*McDowell* v. *County of Alameda, supra*, 88 Cal.App.3d at p. 325, italics added.) As in *McDowell*, plaintiffs here failed to show that County had any knowledge of people endangered by Daniels' conduct. Furthermore, there is no indication that county personnel knew of his dangerous criminal propensities. Under such facts, we find it cannot be said that there was a special relationship between County and plaintiffs so as to invoke a duty to warn.

Although there is no special relationship between County and plaintiffs, it is salient to determine whether or not there was a relationship between County and Daniels. In essence, plaintiffs suggest that (1) employees at the county counseling service had a special relationship to Daniels based on their rehabilitative efforts in regard to a drunk driving charge, and (2) judicial, law enforcement, and probation department employees failed to ascertain Daniels' leave of absence, which resulted in his being placed upon probation. An examination of the case law similarly reveals that no special relationship existed between the county employees and Daniels.

The court in *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425 applied the doctrine of special relationship to a different situation. In that case, therapists at a state-owned hospital were treat-

ing a mentally ill patient who in their presence threatened the life of another person and subsequently carried out that threat. The court found that there was a special relationship between defendant therapist and the patient which imposed a duty upon them to warn intended victims of the foreseeable danger. (*Id.*, at pp. 435-436.)

The relationship between Daniels and the county counseling service, the county judicial system, the county law enforcement agencies, and the county probation department is unlike the special relationship that the *Tarasoff* court found between a patient and his doctor or psychotherapist. The policy behind recognizing a duty to aid or protect is founded upon the existence of relationships of dependence or of mutual dependence. (See *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 779-780 [139 Cal.Rptr. 82]; Rest.2d Torts (1965) § 314 A, com. b; see also Fleming, Law of Torts (4th ed. 1971) p. 143.) Here, Daniels had no dependence upon any of the county personnel whose acts form the basis of the cause of action against defendant County. The county counseling service only provided services to respond to Daniels' drunk driving problem, rather than to cure his so-called psychotic criminal tendencies. Furthermore, there is no indication that any of the judicial employees, law enforcement officers, or probation department personnel had any special relationship with Daniels or knew that he was a foreseeable peril to the neighboring community. Given the fact that the county employees bear little resemblance to the defendant therapist in *Tarasoff*, there is no plausible theory for holding that a special relationship existed between said employees and Daniels.

In the absence of a special relationship with either plaintiffs or Daniels, County was under no duty to control Daniels' actions. We therefore find plaintiffs failed to state a cause of action and it was not an abuse of discretion to sustain the demurrer without leave to amend. Moreover, even if we assume that plaintiffs stated a cause of action against personnel connected with the sentencing judge who levied probation or with jail officials allowing Daniels' release, County was immune from liability for negligence under various provisions of the Government Code. (§§ 845.8, subd. (a); 855.8, subd. (a); 856, subd. (a)(3); see also *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189]; *County of Santa Barbara* v. *Superior Court* (1971) 15 Cal.App.3d 751 [93 Cal.Rptr. 406].)

We now must determine whether the plaintiffs stated a cause of action against defendant State. The following issues must be addressed

before determining that a cognizable claim of negligence was presented: (1) whether there was duty of care owed by State because of its special relationship with assailant Daniels; and (2) whether State was immune from liability under provisions set forth in the Government Code.[3]

The gravamen of the complaint against defendant State and employees Zolotar, Hacker and Orton is that State negligently engaged in supervisorial activities of a ministerial nature which took place after Atascadero granted a leave of absence to Daniels. Although plaintiffs' pleadings assert no special relationship between the Bufords and Daniels, they establish as between Daniels and defendant State the special relationship that arises between a patient and the mental hospital at which he is confined.[4] An examination of the case law shows that, as a matter of law, the requisite relationship existed between State and Daniels.

---

[3]Certain of the negligent acts or omissions alleged against State are patently immune under various statutory provisions of the Government Code. For sake of discussion, we therefore enumerate the types of conduct which are immunized from liability. First, plaintiffs' allegation that State failed to adequately diagnose and treat Daniels is immunized under section 855.8, subdivision (a), which provides immunity "for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or addiction or from failing to prescribe for mental illness or addiction." Second, State is immune for failing to keep adequate records relating to treatment and confinement of a patient. (See *Hernandez v. State of California* (1970) 11 Cal.App.3d 895, 899 [90 Cal.Rptr. 205].) Third, plaintiffs' suggestion that State is liable both for the release of Daniels on a leave of absence and for a failure to communicate psychiatric information which might have precluded the release is undercut by the immunity conferred under section 856, subdivision (a)(3), which insulates public entities and employees for paroling, granting a leave of absence, or releasing a person confined for mental illness or addiction. Fourth, section 856, subdivision (a)(3), also precludes imposing liability upon State for failing to communicate the change in status from leave of absence to unauthorized leave of absence to other state agencies and for failing to gather information which would result in Daniels' reinstitutionalization, since these omissions were related to the protected act of releasing a mentally ill person. Fifth, the alleged failure of the State Department of Corrections and state law enforcement agencies to apprehend Daniels is encompassed under the immunity conferred by either section 845, which insulates public entities or employees for failing to provide sufficient police protection service, or by section 846, which absolves a public entity or its employees from liability for failing to retain an arrested person in custody. Sixth, plaintiffs' allegation that State was negligent in not recording Daniels' record on a computer system accessible to the Visalia Municipal Judicial District is precluded by section 856, subdivision (a)(3), which has been interpreted as creating immunity in a public entity and its employees for injuries resulting from the maintenance of inadequate records relating to a release of a mental patient. (See *Hernandez v. State of California, supra*, 11 Cal.App.3d at p. 899.)

[4]The pleadings establish the requisite relationship by the following allegation: "At some time prior to April 20, 1978, the exact date being unknown to plaintiffs at this time, defendant Kenneth Daniels had been confined to Atascadero State Hospital as a result of numerous offenses, the nature of which will be alleged with more particularity when the same have been ascertained."

As we noted earlier, a duty to aid or protect is increasingly being recognized in special relationships of dependence or mutual dependence. The Supreme Court in *Tarasoff* found that a special relationship existed between a mental patient at a university hospital and his therapist. The court stated that "once a therapist does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 439.) In an accompanying footnote, the court recognized that the therapist must give reasonable warning to foreseeable victims, and that "The matter thus is one which depends upon the circumstances of each case, and should not be governed by any hard and fast rule." (*Id.,* at p. 439, fn. 11.) Relying upon *Tarasoff,* the intermediary courts have recognized special relationships in situations involving an individual's dependence upon a governmental agency for rehabilitation.

One such instance was recognized in the case of *Harland* v. *State of California* (1977) 75 Cal.App.3d 475 [142 Cal.Rptr. 201]. There, a jury had assessed damages against the state in wrongful death suits based partially on its negligence in permitting an individual to be driving while away from his place of residence at the California Veterans Home at Yountville. Evidence at trial had shown that an individual residing at the Veterans Home struck a pickup and killed occupants in both vehicles. Plaintiffs in the wrongful death action claimed that a special relationship existed between the State of California and Edgmon (the driver who collided with the pickup), giving rise to a duty of care on the part of employees at the Veterans Home. On appeal, the court recognized that there was evidence that a special relationship did exist between responsible authorities at the California Veterans Home and Edgmon. This relationship was based on the following factors: (1) the state had power to control veterans needing hospitalization or domiciliary care; (2) any resident of the Veterans Home who left without permission was subject to discipline by the state; and (3) members of the home had previously prevented other veterans from driving who had tendencies towards seizure, blackout, or hypertension. (*Harland* v. *State of California, supra,* 75 Cal.App.3d at p. 481.) After finding that this proof showed the existence of a special relationship, the court also determined that a jury could reasonably conclude that employees of the Veterans Home had notice of facts suggesting that Edgmon's driving risked harm to himself and others. This conclusion was founded on evi-

dence that the home regularly administered four drugs to Edgmon. Nonetheless, the court decided that the judgment could not be sustained on this theory because the home had no lawful basis for restraining the freedom of Edgmon in driving. (*Id.*, at pp. 481-482.)[5]

■ It is clearly established that duty is a question of law, while foreseeability is a question of fact for the jury. (See *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) ■ As in *Tarasoff* and *Harland,* we find that there was a special relationship between State and Daniels. The complaint shows that Daniels was confined to Atascadero State Hospital for commission of several criminal offenses and that various personnel were assigned to his rehabilitative care both during commitment and during his leave of absence. The nature of the relationship here resembles those cases in which a duty was imposed as a matter of law. Although there are substantial questions about the foreseeability of potential victims and the reasonableness of making a public warning about Daniels' release, these are questions for the trier of fact and should not be resolved against plaintiffs at the complaint stage. Therefore, we conclude that the plaintiffs sufficiently established that a special relationship existed between defendant State and Daniels so as to invoke a duty to warn foreseeable victims about his release.

State rebuts the existence of a special relationship by pointing to the fact that Daniels was placed on unauthorized leave of absence when the plaintiffs' injuries occurred. From this, State contends that any special relationship between itself and Daniels ceased, since it was no longer accountable for his activities. As plaintiffs aptly point out, this argument is unpersuasive in light of the fact that Daniels was initially released on an indefinite leave of absence. Atascadero apparently changed his status to unauthorized leave of absence *after* Daniels had been released for about one and a half years on an indefinite leave of absence.[6] Although State suggests that the unauthorized leave of absence is equivalent to an escape by Daniels, this thesis ignores the fact that he was originally released on an indefinite leave of absence *which*

[5]We also note that a similar finding of special relationship (between a juvenile delinquent and county institution) was found in *Thompson v. County of Alameda* (Cal.App.) (hg. granted Mar. 28, 1979, oral argument held Feb. 4, 1980.)

[6]The complaint alleges that Daniels was released from Atascadero on the indefinite leave of absence on January 12, 1976, and that his status was changed to unauthorized leave of absence on June 2, 1977.

*was authorized.* The cases cited by State (*Forde* v. *County of Los Angeles* (1976) 64 Cal.App.3d 477 [134 Cal.Rptr. 549] and *County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479 [105 Cal.Rptr. 374, 503 P.2d 1382]) are inapposite, since they involve a mental patient who left the hospital without authorization and a prisoner who actually escaped from jail. These decisions do not support characterizing an *authorized* leave of absence as an escape which, through the alleged negligence of state employees, was subsequently changed to an *unauthorized* leave of absence. Since Daniels did not escape from Atascadero, the requisite relationship still existed between him and State.

Having determined that there was a special relationship, we now address whether State was immunized from liability under pertinent sections of the Government Code.

■ State initially contends that it is insulated under section 856.2, which precludes liability for an injury caused by an escaping or escaped person who had been confined for mental illness or addiction. (§ 856.2, subd. (a)(1).) We are not persuaded. As noted earlier, we do not believe that Daniels was an *escapee* within the meaning of the term expressed in section 856.2. Unlike those situations where patients left a hospital without authorization or without officially signing out as a patient (see *Forde* v. *County of Los Angeles, supra*, 64 Cal.App.3d at p. 480), Daniels was initially released on an authorized leave of absence, which triggered the freedom which eventually resulted in the injuries sustained by plaintiffs. The fact that Atascadero subsequently changed Daniels' status to unauthorized leave should not obfuscate the authorized nature of his original release. Since escape immunity is inapplicable to Daniels' situation, we consider whether other immunity provisions insulate State from liability.

■ State contends that it is immune under section 856, which states that "Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment:...Whether to parole, *grant a leave of absence to*, or release a person confined for mental illness or addiction...." (§ 856, subd. (a)(3), italics added.) Although this provision does insulate the discretionary decision to grant a leave of absence, we are of the opinion that plaintiffs' complaint reveals a challenge to the *ministerial* actions which followed the discretionary determination. The complaint alleges that State was negligent in its follow-up supervision of Daniels once the leave of absence was granted; it

directs particular attention to the activities of Zolotar, Hacker and Orton. Although subdivision (a) of section 856 grants immunity, certain other actions are not insulated from liability. Section 856, subdivision (c)(3), provides that "Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission *in carrying out or failing to carry out:...A* determination to parole, grant a leave of absence to, or release a person confined for mental illness or addiction...." (Italics added.)[7] Since the complaint attacked the supervisorial actions of state employees postdating the initial determination to grant a leave of absence, we are of the opinion that a cognizable claim was stated which is not immunized under section 856. However, we now examine the immunity provided under section 854.8, which State failed to present in its demurrer before the lower court.[8]

■ Although State did not specifically refer to section 854.8 in its demurrer papers, two defects of substance—lack of jurisdiction and failure to state a cause of action—are not waived by a failure to demur and may be raised for the first time on appeal. (See Code Civ. Proc., § 430.80; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 808, p. 2418.) Since governmental immunity is jurisdictional (cf. *State of California* v. *Superior Court* (1968) 263 Cal.App.2d 396, 398 [69 Cal. Rptr. 683]) and can properly preclude a cause of action, we can appropriately address the applicability of section 854.8.[9]

Section 854.8, subdivision (a)(1), provides: "Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 855, and 855.2, a public entity is not liable for:...An injury proximately caused by *a patient of a mental institution.*" (Italics added.)[10] Since this statutory provision applies to "a patient of a mental institution," we are faced with the novel question of determining whether a person given a leave of absence from a mental institution is within the scope of this immunity statute.

___

[7]Since public employees are liable for omissions in carrying out ministerial acts, the public entity would be liable under section 815.2 (the vicarious liability provision). (See *Guess* v. *State of California* (1979) 96 Cal.App.3d 111, 117-118 [157 Cal.Rptr. 618].)

[8]Accordingly, we directed copies of a letter to both counsel, asking them to address the applicability of this immunity provision.

[9]We also deem it appropriate to consider this provision on the grounds of judicial economy. Since State could base a subsequent summary judgment action on section 854.8, our resolution more expeditiously decides whether a trial on the merits is even necessary.

[10]The excepted sections in this provision are not applicable in the present case.

Section 854.8, subdivision (a)(1), was recently interpreted in the opinion of *Guess v. State of California, supra,* 96 Cal.App.3d 111. Although dealing with an individual who was an outpatient of the Orange County Mental Health Center, the court engaged in an extensive discussion of this immunity provision. Specifically, the court stated: "Section 854.8, however, unlike sections 856 and 855.8, embodies an absolute, broad immunity prevailing over all other provisions of the Tort Claims Act. The section begins: 'Notwithstanding any other provision of this part, . . .' The Legislative Committee Comment on this section quoted in Van Alstyne, California Government Tort Liability (Cont.Ed.Bar 1964) at page 628, indicates clearly that the Legislature intended that public entities should enjoy absolute immunity for the consequences of such persons' actions: 'The immunity provided to public entities by this section prevails over all other provisions of the statute. Thus, the public entity is immune from liability for injuries to persons committed or admitted to mental institutions. . . . In addition, the section provides public entities with immunity from liability for injuries proximately caused by persons committed or admitted to mental institutions.'

"Like sections 856 and 855.8, section 854.8 does not exonerate public employees from liability for injuries proximately caused by their negligence or wrongful omissions with regard to ministerial duties. However, while under sections 856, 855.8 and 815.2 public entities are vicariously liable for such wrongs, section 854.8 mandates that public entities must pay judgments for or indemnify only those public employees who are licensed by the state in one of the healing arts and who suffer a judgment of malpractice against them for acts or omissions within the scope of their employment. [Citation.] Thus section 854.8 shields public entities from *all* direct and vicarious liability for injury proximately caused by a patient of a mental institution, except for specific 'malpractice' situations . . . .

"As amended in 1970, section 854.8, subdivision (a), provides in pertinent part that 'a public entity is not liable for: (1) An injury proximately caused by a patient of a mental institution.' Both Orange County and the State of California are obviously 'public entities' for the purposes of this section. (§ 811.2.) In order to understand and apply section 854.8 to the instant case, we must also ascertain the meaning of the term 'patient' and the phrase 'mental institution.' The Law Revision

Commission Comment to the 1970 amendment to section 854.8 (32 West's Ann. Codes (1979 Cum. Supp.) p. 135) explains the meaning of 'patient' in this context: 'The term "inpatient" refers only to inmates of mental institutions and not outpatients; the broader term "patient" refers to both inpatients and outpatients.' Since plaintiff alleged that Castillo was an outpatient of OCMHC, the term 'patient' clearly applies to him. For the meaning of the phrase 'mental institution,' we need to examine several other statutes.

"Section 854.2 defines 'mental institution': 'As used in this Chapter, "mental institution" means any state hospital for the care and treatment of the mentally disordered or the mentally retarded, the California Rehabilitation Center...or any county psychiatric hospital.' ...Since plaintiff has alleged that OCMHC is a mental health facility operated by Orange County and established pursuant to the Short-Doyle Act (Welf. & Inst. Code, § 5600 et seq.) and that it provided outpatient service to Castillo including treatment, care, control, monitoring and supervision, we must conclude that OCMHC is a 'mental institution' for the purposes of section 854.8.

"Defendants as public entities, therefore, have absolute immunity from any liability for injuries proximately caused by Castillo, a 'patient' of the 'mental institution.'" (*Guess v. State of California, supra,* 96 Cal.App.3d at pp. 119-120, fn. omitted.)

The court also considered the argument that *Tarasoff* had created a judicial exception to section 854.8 by rendering the State of California liable for the actions of a patient of the university's mental health facility. It rejected this argument by noting: "We can, however, find no reference to section 854.8 in *Tarasoff.* Moreover, we note that in *Tarasoff,* the court held that *defendant therapists* (*not* the [state]) were not immune from liability for the alleged omission of their ministerial duty to warn their patient's intended victim of her danger. [Citation.] The court's analysis and discussion indicate that it was establishing the liability of public employees, not of a public entity." (*Guess v. State of California, supra,* 96 Cal.App.3d at p. 121, fn. 6.) Based upon this interpretation, the *Guess* court found that absolute immunity was extended under section 854.8 to the state and county for the acts alleged in the suit before it. (*Id.,* at p. 121.)

We adopt the interpretation utilized in *Guess* and find that State was immunized from liability for the follow-up actions of its employees under section 854.8. In 1970, the Legislature amended this provision, which formerly applied only to persons "committed or admitted to a mental institution." The term "patient" was inserted in place of the previous language of "any person committed or admitted" contained in former subdivision (a)(1). (See Stats. 1963, ch. 1681, § 1, p. 3280.) Further, the broader term "patient" was specifically defined to refer to both inpatients and outpatients. (See Cal. Law Revision Com. com. to § 854.8, 32 West's Ann. Gov. Code (1980 supp. pamp.) p. 146.) Daniels was indeed a "patient," since he was still an inmate of the mental institution. The leave of absence did not change this status, since his commitment to Atascadero was never formally terminated by a court order. (See Welf. & Inst. Code, §§ 7325, 7375, subd. (c).) Daniels was also a patient in the type of "mental institution" covered by section 854.8, since Atascadero is a designated state hospital for the care and treatment of the mentally disordered or the mentally retarded. (See § 854.2; Welf. & Inst. Code, § 7200, subd. (b); Cal. Law Revision Com. com. to § 854.2, 32 West's Ann. Gov. Code (1980 supp. pamp.) p. 144.) Based upon section 854.8, we find that Daniels meets the criteria for "a patient of a mental institution." We concur with the *Guess* court's analysis of *Tarasoff*, in which it was concluded that the Supreme Court did not render an exception to the broad liability provided by section 854.8.

Plaintiffs suggest that the *more specific* immunity provision on leave of absence (§ 856, subd. (a)(3)) should prevail over the *general* section (§ 854.8). Although specific statutory schemes usually do override more general provisions, we observe that section 854.8 expressly prevails over other sections of the Tort Claims Act. As *Guess* noted, this fact is manifest from the language of the section ("Notwithstanding any other provision of this part,") and the comments on legislative intent by Professor Van Alstyne. Given its preeminence in this area, we must reject plaintiffs' argument that another section preempts its application here.

Based on our conclusion that section 854.8 applies to a mental institute inmate who is granted a leave of absence, we hold that the lower court did not abuse its discretion in sustaining the demurrer without leave to amend. Plaintiffs could not state a cause of action against State because that public entity was immune under section 854.8. We note,

however, that defendants Zolotar, Hacker and Orton are still individually liable. Plaintiffs are therefore entitled to maintain a cause of action against these named employees.[11]

The judgment in favor of defendants City, County and State is affirmed.

Brown (G. A.), P. J., and Condley, J.,* concurred.

A petition for a rehearing was denied May 16, 1980, and appellants' petition for a hearing by the Supreme Court was denied June 12, 1980.

---

[11]We further note that State is not required to indemnify public employees under section 854.8, except in one limited circumstance. (See § 854.8, subd. (d).)

*Assigned by the Chairperson of the Judicial Council.