[Civ. No. 22840. First Dist., Div. Three. Nov. 10, 1966.]

HARRY FISH, Plaintiff and Appellant, v. REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants and Respondents.

328

Hersh & Hadfield, Leo Fried and Gerald E. Ambinder for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, Agnes O'Brien Smith, Deputy City Attorney, Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson for Defendants and Respondents.

DEVINE, J.—Plaintiff appeals from a judgment of nonsuit. His action is (1) against the City and County of San Francisco and the Regents of the University of California for alleged malicious prosecution because of a recommendation of Dr. Carden that a petition for his commitment as a mentally ill person be filed; (2) against the City and County of San Francisco for false imprisonment because of the action of Dr. Dean in causing him to be detained temporarily for investigation; and (3) against the Regents of the University of California and Dr. Gradinger, personally, for false imprisonment because of his giving certain information to Dr. Dean which allegedly led to appellant's detention.

The facts are given more specifically below, as they apply to each "case." At this point, however, it may be said that in general the facts are these: Appellant brought his aged father to the Mission Emergency Hospital. Appellant and a private nurse, Bertha Turner, had been attending to the father. Appellant had applied sunlamp treatment to the father's bedsores and believed that the father had suffered a burn. Appellant became insistent that the burn be treated and berated the physicians, who had told him that the burn was not the father's main difficulty (if, indeed, there was a burn at all; the facts are not clear on this subject). It was testified by one of the physicians that a report had come to one of the nurses at the hospital that appellant had threatened to shoot himself or someone else. Appellant, having left the hospital, telephoned to Dr. Gradinger and, referring again to the burn, said he was coming to the hospital and "wanted to make sure" that the doctor was still there. This telephone call caused Dr. Gradinger to be fearful of his life. When appellant arrived at the hospital, he was searched by police officers. It was found that he had no weapon. Dr. Gradinger then called Dr. Dean to the scene. ██ Dr. Dean found appellant to be calm and cooperative. However, because of the information Dr. Dean had, he thought there was a possibility that appellant was dangerous and he caused him to be detained for observation.[1]

---

[1] Dr. Dean wrote an admission sheet, which contains the following: "Pt. accompanied his 86 yr. old father, Oscar Fish, to MEH last night. Showed attitude of unreasonable concern. This AM threatened Dr. Gradinger with a malpractice suit. Although he made no threats of vio-

After several days of observation, Dr. Carden, one of the physicians in the psychopathic ward, came to the conclusion that a mental illness petition should be filed in the superior court. The petition was signed by one J. F. Barker. The medical examiners for the superior court came to a tentative diagnosis of paranoid personality, borderline, but found that there was insufficient reason for commitment.

### Action for Malicious Prosecution (Dr. Carden)

■ Plaintiff's cause of action against the city and the Regents of the University of California is based upon Dr. Carden's recommendation that a petition for commitment of plaintiff be filed. Dr. Carden was not made a defendant.

Section 821.6 of the Government Code specifically exempts public employees from liability in such cases, even if the act has been done maliciously and without probable cause. Section 815.2, subdivision (b) of the Government Code provides that except as otherwise provided by statute (and there is no other applicable provision to this case), a public entity is not liable for an injury caused by an employee where the employee is immune from liability. Therefore, a public entity cannot be held liable in a malicious prosecution action. The cited sections of the Government Code were enacted in 1963, and the facts of this case occurred in 1959. But the legislation was made retroactive, to the extent that it could be so applied constitutionally (Stats. 1963, ch. 1681, § 45, p. 3288), and the constitutionality of this retroactive provision has been upheld (*County of Los Angeles* v. *Superior Court*, 62 Cal.2d 839 [44 Cal.Rptr. 796, 402 P.2d 868]). Besides, malicious prosecution actions against public entities have never been allowable in this state. (*Shakespeare* v. *City of Pasadena*, 230 Cal.App.2d 375, 382, 383 [40 Cal.Rptr. 863].)

■ It appears, however, that appellant argues his case against the regents, insofar as it relates to Dr. Carden's act, not only on the theory of malicious prosecution but also upon section 5551 of the Welfare and Institutions Code, which at the time the action was brought was section 5047 of the same code. This section authorizes filing of petitions for examination

---

lence, his attitude and manner were such as to make Dr. Gradinger feel in fear of his life. A nurse had called earlier (possibly Bertha Turner JU 6-2216) and said that Harry Fish appeared psychotic and had threatened to kill himself or someone else. Police were called by Dr. Gradinger and pt. was escorted to Room 6. Inspector Shelley felt there was no ground for police action. Pt. was quiet and cooperative when I saw him but in my opinion his history indicates he may be psychotic and possibly dangerous. I recommend admission to Ward 92, for psychiatric observation.''

for mental illness. The last sentence provides that neither the person making or filing the petition nor his employer shall be rendered liable if there was probable cause for the making and filing of the petition. Appellant argues that this section impliedly imposes liability for the making of a petition where there was not probable cause and that this was a question for the jury, which should not have been disposed of by nonsuit.

But section 5551 relates to the making and filing of a petition for examination. Dr. Carden did not make or file any petition at all. He recommended that a petition be filed. Petition was made by one J. F. Barker. If the last sentence of section 5551, therefore, can in certain cases be inverted from its negative form to a positive imposing of liability on persons who petition without probable cause, it cannot be interpreted to apply to anyone who is not described in that sentence; and, therefore, cannot bind the employer of one who does not come within its terms, even apart from consideration of governmental immunity.

 An additional reason for affirming the judgment is the overriding policy of the Legislature, as expressed in section 820.2 of the Government Code, which exempts public employees and public entities from liability for discretionary acts of the employees. That the decision of Dr. Carden was a discretionary act is not open to doubt. He had observed appellant for several days. He had the records of appellant's behavior while he was in the hospital.

 Finally, there is an even more specific statute of immunity, section 855.8 of the Government Code, which exempts public entities and public employees from liability resulting from diagnosing or failing to diagnose mental illness.

The judgment of nonsuit relating to the recommendation made by Dr. Carden must be affirmed.

*Action for False Imprisonment (Dr. Gradinger)*

 Plaintiff brings action against the regents who employ Dr. Gradinger and against the doctor personally. (He is the only one personally sued.) It is undisputed that Dr. Gradinger did not make the decision that appellant be detained for mental examination. Indeed, he could not do so. His work was with the Mission Emergency Hospital as a general surgeon. Nor is there any evidence that Dr. Gradinger recommended the detention. Appellant's theory is that the report made by Dr. Gradinger to Dr. Dean brought about the detention.

It may be that, as the trial judge suggested, Dr. Gradinger was unduly alarmed. It may be that he mistakenly thought the telephone call in which appellant said he wanted to make sure the doctor was still there to be a threat. ██ But the reporting of facts which precipitate a detention does not constitute false imprisonment, even if the information be mistakenly given and even though it be the principal cause of plaintiff's imprisonment. ██ In the absence of any testimony that Dr. Gradinger acted in bad faith or took an active part in the detention of appellant, no cause of action is made out against the regents. (*Peterson* v. *Robison*, 43 Cal.2d 690, 695 [277 P.2d 19]; *Turner* v. *Mellon*, 41 Cal.2d 45 [257 P.2d 15]; *Gogue* v. *MacDonald*, 35 Cal.2d 482 [218 P.2d 542, 21 A.L.R.2d 639].).

### *Action for False Imprisonment (Dr. Dean)*

██ False imprisonment is also claimed by appellant because of the actions of Dr. Dean, although Dr. Dean is not a personal defendant. The action is against the city and county. Dr. Dean testified that he was handling admissions, consultations and electroencephalography for the psychopathic ward of San Francisco General Hospital. Dr. Dean conceded that appellant's behavior in his presence would not lead the doctor to recommend hospitalization. Dr. Dean relied on information he had received from others. This history consisted of an attitude of unreasonable concern for his father's condition, a dictatorial manner relating to treatment of the father, the fear that Dr. Gradinger had for his life, which had resulted from appellant's telephone call to Dr. Gradinger, and from the telephone call, referred to above, about the possibility of a shooting.[2]

Appellant concedes that the decision to detain a person for observation of his mental condition is a discretionary, and not a ministerial, act. There is no liability from an injury resulting from a public employee's act or omission which was the result of the exercise of discretion vested in him, whether or not such discretion be abused (unless otherwise provided by statute). (Gov. Code, § 820.2.) But appellant contends that although the decision itself is discretionary, it was required to be made under the provisions of section 5050.3 of the Welfare and Institutions Code. (The amended and renumbered section is now section 5880 of the Welfare and Institutions Code.) The statute permitted the superintendent or physician in charge of the quarters provided in the county hospital to detain a person, provided (1) that there be a written application

[2]The source of this telephone call was not established. Dr. Dean thought a nurse at the hospital had received it.

by one of the officers described in the section, (2) that the application state the circumstances under which the person's condition was called to the officer's attention, and (3) that the application shall state that the officer believes, as a result of his personal observation, that the person is mentally ill and because of his illness is likely to injure himself or others if not immediately hospitalized. Appellant argues that no such application was made. Appellant contends that the statutory requirement for the application requires a ministerial, and not a discretionary, act. Therefore, says appellant, the city and county is liable for the omission of its employee, Dr. Dean, to perform this ministerial duty.

Appellant cites no authority, and we know of none, which holds that the making of the application referred to in section 5050.3 (now section 5880) is a ministerial act. It is doubtful, when the decision to detain a person for observation has been made by a physician, that the omission to file the application described in section 5050.3 is such an omission of a ministerial act as would make a public entity which employs such physician liable for false imprisonment. The whole process has a strong element of judgment about it which makes the application a secondary thing.

But even if we assume that the making of the application was a required ministerial, and not a discretionary, act, we are not disposed to extend the terms of section 5050.3, as that section read at the relevant time, beyond their express requirements. In 1959, section 5050.3, in defining the persons who could file an application for restraint of one thought to be mentally ill, referred to "peace officer or health officer." (Stats. 1955, ch. 106, § 1, p. 569.) It did not, at the time of the facts which gave rise to this case, refer to a "county physician" or "assistant county physician." These officials were first mentioned in an amendment to section 5050.3 effective September 18, 1959. (Stats. 1959, ch. 1414, p. 3693.) We agree with respondent city and county that when appellant was detained in February 1959, there was no authorization given to, or duty imposed on, a county physician or assistant county physician to make the described application.

There is, besides, another section which immunizes respondent city and county, section 855.8 of the Government Code. This section, which was referred to above in discussing the acts of Dr. Carden, provides immunity for injury resulting from diagnosing, or failing to diagnose, mental illness. We regard this section as including a preliminary

diagnosis such as that made by Dr. Dean. The physician, faced with the obligation of protecting the subject and other persons on the one hand, and of regarding the person's liberty on the other hand, must make a judgment. This judgment is a diagnosis, though a limited one.

The judgment of nonsuit in favor of the Regents of the University of California, Dr. Gilbert Gradinger, and the City and County of San Francisco is affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 4, 1967.