[No. B008675. Second Dist., Div. Two. May 1, 1986.]

FRANK O. BRIMMER et al., Plaintiffs and Appellants, v.
CALIFORNIA CHARTER MEDICAL, INC., et al.,
Defendants and Respondents.

PEARL J. BRIMMER, Plaintiff and Appellant, v.
VICTOR VALLEY COMMUNITY HOSPITAL et al.,
Defendants and Respondents.

682

**COUNSEL**

Martin L. Abrams for Plaintiffs and Appellants.

Henry R. Kraft, Kirtland & Packard and Charles F. O'Brien for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—On this appeal, plaintiffs contest various rulings made by the trial court during and following a lengthy jury trial in which plaintiffs pursued, in large part unsuccessfully, claims against multiple defendants for medical malpractice, false imprisonment, and intentional infliction of emotional distress. We reject all contentions of error.

I

Plaintiffs are husband and wife, Frank and Pearl Brimmer. They lived in Hesperia which is in San Bernardino County. Before going to bed on August 8, 1982, Pearl Brimmer attempted suicide by consuming sleeping pills, Darvon, and Tylenol. When Frank Brimmer was unable to awaken her the next morning, he called an ambulance. The paramedics transported Mrs. Brimmer to nearby Victor Valley Community Hospital. There she was treated by her attending physician, Dr. Moushabek, who consulted with Dr. Aubuchon, a licensed psychologist.

Mrs. Brimmer remained unconscious for the next three days. When she awoke on August 12, she made suicidal remarks to Dr. Aubuchon as well as to several nurses. In evaluating her, Dr. Aubuchon consulted with Dr. Moushabek and Dr. Beck, a psychiatrist. Concluding that she was imminently suicidal and a danger to herself, Dr. Aubuchon initiated, at 2 p.m. on August 12, a 72-hour involuntary detention hold to permit further psy-

chiatric evaluation. The hold was placed pursuant to Welfare and Institutions Code section 5150.

An ambulance took Mrs. Brimmer from Victor Valley Community Hospital in San Bernardino County, to Charter Oak Psychiatric Hospital in Los Angeles County.

Dr. Beck arranged for plaintiff's admission to Charter Oak. During the morning of August 13, Dr. Ahluwalia, also a psychiatrist, interviewed plaintiff. Later that day, plaintiff sustained injuries upon falling from her bed. The apparent cause of that accident was the unauthorized removal by a nurse of a Posey restraint which Dr. Ahluwalia had ordered in place so as to prevent plaintiff from injuring herself. Plaintiff was then transferred to another institution to obtain medical care and was ultimately discharged on August 21.

Thereafter, Mrs. Brimmer filed actions against all of the above named doctors and medical facilities, alleging medical malpractice, false imprisonment, and intentional infliction of emotional distress. Additionally, Mr. Brimmer joined in as a plaintiff in the count for emotional distress.

Plaintiffs' case-in-chief lasted almost 5 weeks, and consisted of over 15 witnesses and in excess of 50 pieces of documentary evidence. Following its conclusion, the trial court granted the motions of Drs. Moushabek, Ahluwalia, and Beck for nonsuit in regard to plaintiffs' claims against them for false imprisonment and intentional infliction of emotional distress.

After defendants presented their case, the jury returned special verdicts negating liability on the part of Victor Valley Community Hospital, the Beck Psychiatric Medical Group, and Drs. Beck, Moushabek, and Aubuchon. The jury found Charter Oak Psychiatric Hospital liable for negligence but reduced plaintiff Pearl Brimmer's claim against it by 30 percent because of its finding of her comparative fault. Charter Oak has satisfied its judgment and thus is not a party to this appeal.

II

Plaintiffs first contend that the trial court erred in granting nonsuit (Code Civ. Proc., § 581c) in favor of Drs. Moushabeck, Ahluwalia, and Beck. We disagree.

The basis of the false imprisonment theory was the claim that the 72-hour confinement of Pearl Brimmer triggered by Dr. Aubuchon's August 12 order was illegal. The allegations of intentional infliction of emotional

distress are clearly derivative thereof because it was the allegedly unlawful intentional confinement which caused the subsequent emotional distress.

In granting nonsuit, the trial court ruled that Drs. Moushabek, Ahluwalia, and Beck could have no liability because they had not participated in the decision to detain Mrs. Brimmer. However, because as will be more fully amplified, there appeared to be a factual dispute as to the legality of hold placed by Dr. Aubuchon, the trial court denied his motion for nonsuit so as to permit the jury to decide that issue. We will conclude that the grant of nonsuit was correct because in the absence of substantial evidence that any of the three doctors took an *active* part in the detention of plaintiff, no cause of action was made out against them. (*Fish* v. *Regents of Univ. of Cal.* (1966) 246 Cal.App.2d 327, 331-332 [54 Cal.Rptr. 656].)

■    The relevant legal principles were recently stated as follows: " " "The granting of a motion for nonsuit is warranted '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' " [Citation.] Thus, before a judgment of nonsuit can be disturbed, there must be some substance to plaintiff's evidence upon which reasonable minds could differ; proof that raises mere speculation, suspicion, surmise, guess or conjecture is not enough to sustain his burden. [Citations.] . .. .' [Citation.] Furthermore, it is not necessary that there should be an absence of conflict in the evidence; there must be a substantial conflict in the evidence to deprive the court of this power. [Citation.]" (*Campbell* v. *Security Pac. Nat. Bank* (1976) 62 Cal.App.3d 379, 384-385 [133 Cal.Rptr. 77].)

■    As to Drs. Beck and Ahluwalia, plaintiffs have failed *to point to any* probative evidence in the record which suggests that either of them participated in the decision to detain Pearl Brimmer. Plaintiffs' reliance upon the testimony of their expert, Dr. Cohn, is sorely misplaced since he did no more than testify as to the criteria a doctor should utilize in making a decision to place an involuntary 72-hour hold on a patient. Dr. Cohn, who was not a precipient witness to any of the relevant events, merely provided evidence on the question of the standard of care which the jury could use in deciding the malpractice claims.

In regard to Dr. Moushabek's purported participation in the decision to detain Mrs. Brimmer, the only evidence plaintiffs cite are the notes, written by Nurse Kalisz, of a telephone conversation she had had with the Dr. Moushabek. The notes recited that Dr. Moushabek stated that he and Dr.

Aubuchon had decided to transfer Mrs. Brimmer to Charter Oak Psychiatric Hospital. However, these notes only tend to show that Dr. Moushabek may have helped Dr. Aubuchon decide to which psychiatric institution plaintiff should be transferred; the notes did not establish that Dr. Moushabek had participated in the initial decision to detain plaintiff. Moreover, testimony established that it was solely Dr. Aubuchon's decision to place the hold on plaintiff.[1] Thus, these notes did not constitute *substantial* evidence of plaintiffs' theory so as to render the grant of the nonsuit improper.

## III

As noted earlier, the jury returned a special verdict absolving Dr. Aubuchon of liability. Additionally, the Beck Psychiatric Medical Group was exonerated of any fault as its liability was vicarious to that of Dr. Aubuchon. In order to evaluate the several claims of error made by plaintiff in regard to those verdicts, it is first necessary to state the applicable law.

Pearl Brimmer was detained pursuant to the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) which is designed to provide for prompt evaluation and treatment of individuals with serious mental disorders. In this regard, Welfare and Institutions Code section 5150 provides: "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a . . . member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, . . . or other professional person designated by the county, may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for a 72-hour treatment and evaluation . . . ." No judicial hearing is required to initiate a 72-hour hold.

Additionally, Welfare and Institutions Code section 5278 states in pertinent part: "Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . shall not be held either criminally or civilly liable for exercising such authority in accordance with the law."

The jury was given an instruction in the language of Welfare and Institutions Code section 5150 and an instruction, based upon the holding of *People* v. *Triplett* (1983) 144 Cal.App.3d 283 [192 Cal.Rptr. 537], as to what constitutes probable cause to detain an individual under section 5150. The jury was also instructed: "If you find that defendant, Paul Au-

---

[1]Dr. Moushabek testified that he did not participate in the decision to send Mrs. Brimmer to Charter Oak.

buchon, Ph.D., was an individual authorized to sign the application for 72-hour detention of Mrs. Brimmer, then neither defendant, Paul Aubuchon, Ph.D., nor defendant, Beck Psychiatric Medical Group, shall be held civilly liable to plaintiffs in this case."

In view of these instructions, plaintiffs clearly err in claiming that the jury was not instructed that Dr. Aubuchon would only be exempt from liability if he exercised his authority in accord with law. The jury was told that a detention can only be initiated upon probable cause and additionally was instructed as to what constitutes probable cause. Significantly, plaintiffs failed to request any additional instructions in this area. No prejudicial instructional error occurred.

■ Equally meritless is the contention that the trial court erred when it instructed the jury that "[u]nder the circumstances of this case, the fact that Mrs. Brimmer was transferred across a County line [from Victor Valley Community Hospital in San Bernardino County to Charter Oak Psychiatric Hospital in Los Angeles County] is not in itself a violation of law." While it is true that Welfare and Institutions Code section 5120 states a public policy of providing care and treatment for mental patients in the local community, no statute provides, nor could it be reasonably argued, that it is a violation of law to transport a patient to another county if that decision is made, as was done here, by the attending doctor(s) in a reasonable exercise of judgment.

■ We also reject plaintiffs' claim that there is insufficient evidence to sustain the jury's finding that Dr. Aubuchon was authorized to sign the 72-hour detention hold. The sole basis of this evidentiary controversy was the mere fact that Dr. Aubuchon's name did not appear on a list kept by San Bernardino County of individuals who had been issued cards authorizing them to sign 72-hour holds. However, the evidence did include the card issued to Dr. Aubuchon which authorized him to initiate such holds and the testimony of a San Bernardino County Mental Health Services employee that Dr. Aubuchon's possession of a validly issued card conferred upon him authority to initiate a 72-hour hold even if his name did not appear on the county list. Thus, substantial evidence exists to support the jury's finding.

## IV

Plaintiffs next claim error in the manner in which the trial court awarded costs. We disagree.

The relevant chronology and facts are as follows: Because defendants' allegedly tortious conduct had occurred in two counties (Los Angeles and

San Bernardino), plaintiffs had initially filed separate actions in each county. Thereafter, the matters were consolidated and tried in Los Angeles County.

On June 4, 1984, plaintiffs filed a notice of appeal in the Los Angeles action from the grant of defendants' motion for nonsuit and from the jury's special verdict.

On June 20, defendants filed their costs bill. On June 25, plaintiffs filed a motion disputing some of the costs claimed by Dr. Moushabek.

On June 25, the trial court entered judgment in both cases. In each judgment, blank spaces were left in for the specific amount of costs to be awarded.

On August 24, a hearing was conducted on various issues, including the taxation and allocation of costs. The trial court agreed with plaintiffs to a certain extent and thus disallowed some of Dr. Moushabek's costs. The court then adjudicated all costs and ordered them entered into the judgment in the San Bernardino County lawsuit. Additionally, the court ordered the language in the judgment in the Los Angeles County action about costs, which still included blank spaces, stricken. Later that day, plaintiffs filed a notice of appeal in the San Bernardino County action.

■ Plaintiffs now complain that the trial court lacked jurisdiction to make its August 24th award of costs because a notice of appeal had been filed in the Los Angeles County action on June 4, 1982. This claim is meritless. First, the June 4th notice of appeal was clearly premature in that no judgment had yet been entered by the trial court. Moreover, even if that notice of appeal were construed as being taken from the judgment subsequently entered, the trial court's actions of August 24 were not error. In regard to the judgment in the Los Angeles case, the court essentially corrected clerical error by striking from the judgment language which was of no moment because the sums owing had been left blank. And the court could quite properly enter specific costs due in the judgment from the San Bernardino County case because when it did so, no appeal had yet been taken from that judgment and its entry of costs was made within two days of its adjudication thereof. (See Code Civ. Proc., § 1033.)

## V

■ At the hearing on August 24, 1982, plaintiffs unsuccessfully asked the trial court to terminate the coordinated proceedings. Plaintiffs now contend that the denial of that motion was an abuse of discretion.

Until the judgments in a coordinated action are final, the trial court has discretion to retain jurisdiction of all of the matters. (See rule 1545 of the Cal. Rules of Court.) The present record, consisting solely of a minute order from the reported hearing of August 24th stating that plaintiffs' motion to terminate the coordination was denied, fails to discharge plaintiffs' burden of establishing that the ruling was prejudicial error.[2]

## VI

The judgments are affirmed.

Compton, J., and Gates, J., concurred.

A petition for a rehearing was denied May 30, 1986, and appellants' petition for review by the Supreme Court was denied July 16, 1986.

---

[2]Defendants have requested sanctions be imposed upon plaintiffs for prosecuting the instant appeal. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645-651 [183 Cal.Rptr. 508, 646 P.2d 179]; rule 26 (a) of the Cal. Rules of Court.) Expediency dictates elimination of any further proceedings and therefore we do not discuss that request.