[No. B071253. Second Dist., Div. Seven. Aug. 6, 1993.]

MIKE ABEYTA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOLENE COMPANY, INC., et al., Real Parties in Interest.

COUNSEL

Williams & Kilkowski and James M. Kilkowski for Petitioner.

No appearance for Respondent.

Iverson, Yoakum, Papiano & Hatch, John M. Garrick and Mark A. Pearson for Real Parties in Interest.

OPINION

**JOHNSON, J.**—In this writ proceeding we clarify an issue which evidently has been causing some confusion in certain trial courts. We construe the Supreme Court's *Foley* decision (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [765 P.2d 373]) to exempt from the statute of frauds oral employment contracts which are terminable within one year even when those contracts provide the term of employment is for a specific duration longer than one year. Although we do not regard this as a close question, we publish this opinion solely for the purpose of providing guidance to trial courts on what apparently is proving to be a troublesome issue.

FACTS AND PROCEEDINGS BELOW

This case turns on a narrow issue requiring interpretation of the statute of frauds. Accordingly, we only provide a brief summary of the facts in order to place this narrow issue in context.

According to the allegations of petitioner Mike Abeyta's complaint, real party in interest Jolene Company, Inc. (Jolene) is a dress manufacturer and distributor. In November 1989, Jolene and Abeyta entered into an oral employment contract. This contract called for Abeyta to serve as national sales manager and as sales representative for Jolene in certain territories. He was expected to hire most of the sales staff. Jolene agreed to pay him commissions on his personal sales and on sales made by the sales staff he was supervising. Under this oral contract, Abeyta would be entitled to a 10

percent stock ownership in Jolene if and when Jolene's sales reached $12 million a year.

Also according to petitioner's complaint, Jolene terminated Abeyta as sales manager in March 1991. Prior to that time Jolene allegedly had failed to pay his commissions on sales made during his tenure as sales manager.

Abeyta filed suit against Jolene and some of its officers based on alleged breaches of the oral employment contract and related causes of action. The second amended complaint was filed January 31, 1991, and serves as the pleading upon which this case was brought to trial. It alleges 10 causes of action but most of these counts depend on the validity of the oral employment contract entered into in November 1989.

A court trial began in the Los Angeles Superior Court on September 14, 1992. In his opening statement, Abeyta's counsel described the oral contract as follows:

"As a result [of preliminary negotiations] they entered into an oral agreement *of an indefinite duration* that wasn't terminable *except for cause* prior to a three-year period. Cause being the ordinary causes in commercial life, dishonesty, immorality, failure to perform. For example, if he says I'll organize a sales force and doesn't proceed to hire anybody for six months, Jolene had the right to terminate him. He's not entitled to two percent commission for all the orders which comes in if he does nothing.

"Similarly, at the end of three years there was no termination right unless the shippings had not reached a million dollars a month net shippings. . . ." (Italics added.)

At the conclusion of this opening statement, real parties in interest moved for nonsuit. This motion was based on a contention the oral employment contract violated the statute of frauds because it was not to be performed within one year. After considerable argument, the trial court took the motion under submission. Later and after further argument the court granted nonsuit as to several counts which depended on the validity of the oral employment contract. The court also granted Abeyta's request to stay trial of the remaining counts while he sought relief in the appellate courts.

On November 12, 1992, Abeyta filed his petition for writ of mandate in this court. On November 13, 1992, this court summarily denied the writ. On January 21, 1993, the California Supreme Court granted Abeyta's petition for review and ordered the matter transferred to this court. The Supreme

Court ordered us to vacate our denial of the writ and to issue an alternative writ. In its order, the high court also cited its decision in *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, 671-675. On February 3, 1993, we issued an alternative writ.

## DISCUSSION

The standard of review for a nonsuit after conclusion of the opening statement is well settled. Both the trial court in its initial decision and the appellate court on review of that decision must accept all facts asserted in the opening statement as true and must indulge every legitimate inference which may be drawn from those facts. (*Russell* v. *Soldinger* (1976) 59 Cal.App.3d 633, 640 [131 Cal.Rptr. 145]; *Timmsen* v. *Forest E. Olsen, Inc.* (1970) 6 Cal.App.3d 860, 868 [86 Cal.Rptr. 359].) A nonsuit at this early stage of the proceedings is disfavored. (*Baber* v. *Napa State Hospital* (1989) 209 Cal.App.3d 213, 217 [257 Cal.Rptr. 55].) It can only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can be said those facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of its cause of action or has inadvertently established uncontrovertible proof of an affirmative defense. (*Brimmer* v. *California Charter Medical, Inc.* (1986) 180 Cal.App.3d 678 [225 Cal.Rptr. 752]; *Breazeal* v. *Henry Mayo Newhall Memorial Hospital* (1991) 234 Cal.App.3d 1329, 1337 [286 Cal.Rptr. 207].)

In the context of the instant case, this nonsuit can be upheld on appeal only if the facts asserted in Abeyta's opening statement even when construed most favorably to his position clearly establish this oral employment contract could never be "performed" within one year and thus is unenforceable under the statute of frauds.

We begin with the meaning of the relevant provision of the statute of frauds, Civil Code section 1624, subdivision (a), as it applies to oral employment agreements.[1] For guidance on this question we need look no further than the decision the Supreme Court highlighted in its order remanding the writ petition to this court, *Foley* v. *Interactive Data, supra.*

"Civil Code section 1624, subdivision (a), invalidates '[a]n agreement that by its terms is not to be performed within a year from the making

---

[1]Civil Code section 1624 provides in part:

"The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent:

"(a) An agreement that by its terms is not to be performed within a year from the making thereof."

thereof' unless the contract 'or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent.' In *White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336 [66 Cal.Rptr. 697, 438 P.2d 345], we held that this portion of the statute of frauds 'applies only to those contracts which, by their terms, cannot possibly be performed within one year.' *(Id.,* at p. 343.). . . ." *(Foley* v. *Interactive Data, supra,* 47 Cal.3d 654, 671.)

In *Foley* itself the Court of Appeal had affirmed a demurrer on grounds inclusion of a term in an oral contract allowing termination only for cause created " 'a reasonable expectation of employment for more than one year (in which case the statute of frauds does apply, barring this action).' " (47 Cal.3d at p. 672.) In rejecting this grounds for upholding the demurrer, our high court ruled: "Even if the original oral agreement had expressly promised plaintiff 'permanent' employment terminable only on the condition of his subsequent poor performance or other good cause, such an agreement, if for no specified term, *could* possibly be completed within one year. [Citation.] Because the employee can quit or the employer can discharge for cause, even an agreement that strictly defines appropriate grounds for discharge can be completely performed within one year—or within one day for that matter." *(Id.,* at pp. 672-673.) (Italics in original.)

Most significantly, given the facts asserted in Abeyta's opening statement, the California Supreme Court summarized the holdings of several California and out-of-state decisions it approved: "These authorities support the general rule that if a condition terminating a contract may occur within one year of its making, then the contract is performable within a year and does not fall within the scope of the statue of frauds. This is true even though performance of the contract may extend *for longer than one year* if the condition does not occur. [Citation.]

"Other courts have pointed out that within a year an employee such as plaintiff could have (1) been discharged for cause [citation]; (2) retired, died or voluntarily left employment [citation]; or (3) been terminated if declining profitability compelled a general layoff or cessation of business altogether." [Citation.] (47 Cal.3d at p. 673, italics added.)

The California Supreme Court underscored the breadth and scope of its holding in *Foley* by quoting from a 90-year-old Massachusetts case. "In 1897, the Supreme Judicial Court of Massachusetts rejected an employer's contention that the statute of frauds invalidated an oral agreement for 'permanent employment' so long as the plaintiff, an enameler, performed his

work satisfactorily. The majority, including Chief Justice Field and Justice Holmes, rejected the employer's defense. 'It has been repeatedly held that, if an agreement whose *performance would otherwise extend beyond a year* may be completely performed within a year on the happening of *some contingency*, it is not within the statute of frauds. [Citations.] In this case, we say nothing of other contingencies. The contract would have been completely performed if the defendant had ceased to carry on business within a year.' (*Carnig* v. *Carr* (1897) 167 Mass. 544 [46 N.E. 117, 118.].)" (47 Cal.3d at p. 674, italics added.)

Our high court then turned to legislative history to reinforce its construction of the statute of frauds. "The Legislature, which in 1872 enacted Civil Code section 1624, was aware of precedent limiting the reach of the one-year provision of the statute of frauds. The Code Commissioners' notes specifically advised that 'in a similar statute in New York these words have been construed as applying only to contracts which cannot *possibly* be executed within a year, *under any contingency*. . . . To bring a contract within the statute relating to parol agreements, not to be performed within one year, it must appear to be *necessarily incapable of performance* within that time.' (Italics in original.)" (47 Cal.3d at p. 674.)

The Supreme Court then applied this broad rule of exclusion from the statute of frauds to the facts in *Foley*. "In sum, the contract between plaintiff and defendant could have been performed within one year of its making; plaintiff could have terminated his employment within that period, or defendant could have discharged plaintiff for cause. Thus, the contract does not fall within the statute of frauds and the fact it was an implied or oral agreement is not fatal to its enforcement." (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 675.)

In the instant case, the trial court somehow construed the above language in *Foley* as only announcing a rule applicable to contracts which have an *indefinite* term, not those which have a stated term in excess of one year. According to this interpretation, the presence of a provision allowing termination for cause during the first year (or throughout the stated term of the contract) would not take an oral contract out of the statute of frauds so long as the contract was for a specified term of two years or five years or any other period in excess of one year rather than for an indefinite span. The trial court then construed the words of Abeyta's counsel in his opening statement to describe an employment contract with a specified term of three years rather than one for an indefinite period.

We differ with the trial court on both counts. The underscored language in several of the passages quoted from *Foley* (as well as authorities it quoted

with approval) makes clear the key question is whether the contract can possibly be terminated under any contingency within one year, not the length of time it is contemplated performance may continue beyond the one year. If performance under a contract could be terminated within one year under some contingency it makes no difference whether the contract has a definite outside term of two years, three years or five years—or whether it is for the employee's lifetime or some other "indefinite" period.

It is possible the trial court became fixated on the high court's description of its prior decision in *White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336 [66 Cal.Rptr. 697, 438 P.2d 345] which appeared early in the *Foley* discussion of the statute of frauds issue. It is true at that point the court mentioned the *White Lighting* holding "that the trial court erroneously sustained the defendant's demurrer because, although the agreement contemplated employment on a 'permanent' basis, the *statute does not apply to an employment contract of indefinite duration* " 'unless its terms foreclose the employee's completion of the performance of the contract within one year. . . .' " (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d 654, 672, italics added.)

It likewise is true the alleged oral contract in *Foley* itself was one without a definite termination point. However, the rule the high court announced in *Foley* and the rationale it explained both apply to any oral contract the performance of which *could* extend beyond one year but the performance of which *could* be terminated in less than one year. Thus, at one point in the *Foley* opinion the Supreme Court announces the "general rule" that if a terminating condition can occur within one year a contract is outside the statute of frauds "even though performance of the contract may extend for longer than one year. . . ." (47 Cal.3d at p. 673.) Notably, the high court does not say even though performance may extend for "an indefinite period" but rather uses the language for "longer than one year." (To the same effect, see the language of the Massachusetts case quoted above, pages 1042-1043, *ante*, which speaks of agreements whose "performance would otherwise extend *beyond a year*," not into infinity.) Just as an oral contract which *required* performance over a period of one year and one day would be within the statute of frauds, such a contract would be removed from the statute if some condition within the contract or outside that contract made it conceivable the contract could be terminated before the first year was out.

Accordingly, were we to accept the trial court's interpretation the oral contract was a three-year contract, as opposed to a contract with an indefinite lifespan, we still would hold its enforcement is not barred by the statute of frauds. The trial court did not reject—and could not reject—the language in the opening statement describing the oral contract as permitting Jolene to

discharge Abeyta for cause *anytime* within those first three years. This cause could have occurred or Jolene could have discovered it the day after the contract was signed and Abeyta discharged for that reason. Thus, since a "condition terminating [this oral employment] contract may occur within one year of its making, then the contract is performable within a year and does not fall within the scope of the statute of frauds." (*Foley* v. *Interactive Data, supra,* 47 Cal.3d 654, 673.)[2]

Even were we to accept the trial court's interpretation of the *law* we would reach the same ultimate result: it erred in granting nonsuit under the *facts* of this case. Assume for the moment the rule of law was to the effect an oral employment contract which mentions a specific duration in excess of one year—in contrast to one which has an indefinite term—is within the statute of frauds despite a provision allowing the employee to be discharged for cause within the first year of the contract. Under the standard of review governing appeals of nonsuits, we are unable to conclude Abeyta's opening statement can be construed to describe such a contract. Accepting the facts asserted in that statement as true, as we must, and indulging all inferences from those facts favorable to Abeyta, as we must, we can only reach one conclusion. Abeyta's opening statement describes an oral contract of *indefinite* duration. As described, that contract allows Jolene to discharge Abeyta *for cause* at *anytime* during the indefinite lifespan of that contract. However, the contract also permits Jolene to discharge Abeyta for another reason at the three-year mark. At that point, he can be discharged for failing to have increased Jolene's sales by at least a specified percentage. This could be viewed as establishing a special "for cause" category of grounds for dismissal which can be invoked at the three-year point in the life of the otherwise indefinite contract. Or, perhaps more appropriately, it could be viewed as allowing Abeyta's discharge "without cause" should he fail to reach the target for increased sales of Jolene's products.

According to this eminently reasonable interpretation of Abeyta's opening statement, this was not a three-year contract but an indefinite contract. The three-year term in the contract did not mark the end point of the contract. It only served to establish a point by which Abeyta was expected to reach

---

[2]Abeyta's opening statement clearly alleged the employer, Jolene, could terminate the contract for cause anytime during the first year—as well as after that time. Accordingly, we need not and do not address whether an employment contract which expressly barred the employer from terminating *for any reason* within the first year nevertheless would fall outside the statute of frauds if either of two other possibilities remained. Those possibilities, both mentioned in language from *Foley* which is quoted above, are: (1) the contract does not bar the employee from quitting, or (2) despite the contract the law would allow the employer to terminate the contract should it go out of business or, in some circumstances, even if it suffered lesser economic reversals.

certain sales goals. If he failed to reach those goals, Jolene had the right under the oral contract to discharge Abeyta without further cause. But if he succeeded, the oral contract and its terms could extend into the indefinite future.

Once the contract is interpreted, as we are convinced it properly should, as an indefinite contract, the trial court's own reasoning leads to a conclusion the oral employment contract in this case falls outside the statute of frauds. Even under the trial court's unduly narrow interpretation of *Foley*, this Supreme Court opinion dictates this is a contract which could be performed in less than one year. As such, it is not barred by the statute of frauds.

But returning to the main theme of this opinion, the central lesson is the Supreme Court opinion in *Foley* applies to all employment contracts which can possibly terminate within one year, even those which have a defined *outside* limit of more than one year. *Foley* tells us any such contract is exempt from the statute of frauds and is enforceable even if oral rather than written.

## Disposition

Let a peremptory writ of mandate issue ordering respondent court to vacate its order granting real parties' motion for nonsuit as to the first, third, fourth, and sixth causes of action in petitioner's complaint, and to enter a new order denying said motion.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied August 31, 1993.